

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-15-00120-CV

**UNIVERSITY OF THE INCARNATE WORD** and Christopher Carter,
Appellants

v.

Valerie **REDUS**, Individually, and Robert M. Redus, Individually and as Administrator of the
Estate of Robert Cameron Redus,
Appellees

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-07249
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:  Jason Pulliam, Justice

Sitting:  Karen Angelini, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  August 26, 2015

APPEAL DISMISSED FOR WANT OF JURISDICTION

University of the Incarnate Word (UIW) brings this interlocutory appeal from the trial

court's order denying its plea to the jurisdiction. In its plea to the jurisdiction, UIW asserted the

trial court is without subject matter jurisdiction because UIW is entitled to governmental

immunity. On appeal, the Redus plaintiffs (the Reduses) filed a motion to dismiss contending this

court lacks interlocutory jurisdiction. We dismiss UIW's interlocutory appeal for want of

jurisdiction.

## FACTS AND PROCEDURAL HISTORY

It is undisputed that UIW is a private institution of higher education and operates its own police department. This suit arises from an incident in which a UIW police officer, Cpl. Christopher Carter, conducted a DWI traffic stop and detention of UIW student Cameron Redus. During the detention Officer Carter shot Redus five times, resulting in Redus's death. The Reduses filed suit against UIW and Officer Carter and asserted causes of action of: (1) negligence and gross negligence based upon UIW's failure to exercise reasonable care in the hiring, training and employment of its police officers; (2) negligence, negligence per se, and gross negligence based upon Officer Carter's unwarranted use of excessive force; (3) wrongful death; and (4) survival. In their First Amended Answer, UIW and Officer Carter asserted several affirmative defenses, including UIW's assertion of governmental immunity from liability.

Although ambiguous, it appears UIW filed its plea to the jurisdiction based upon the assertion of governmental immunity from suit and liability. UIW also moved to dismiss the suit against Officer Carter based upon UIW's entitlement to governmental immunity. Pertinent to this interlocutory appeal, at the hearing on its plea to the jurisdiction, UIW asserted governmental immunity from suit pursuant to the limitations of liability outlined in the Texas Tort Claims Act (TTCA). The trial court denied UIW's plea to the jurisdiction and motion to dismiss. UIW perfected this interlocutory appeal filed pursuant to Texas Civil Practice and Remedies Code Section 51.014(a)(8).

## ANALYSIS

### THE REDUSES' MOTION TO DISMISS FOR WANT OF JURISDICTION

Within the procedural posture of this case, UIW seeks entitlement to file this interlocutory appeal under Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. Section 51.014(a)(8) permits a party to appeal from an interlocutory order that "grants or denies a plea to

the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2015). The parties agree that the only definition of "governmental unit" implicated is that appearing in Section 101.001(3)(D), which defines "governmental unit" as any "other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D) (West Supp. 2014).

UIW contends it is "a 'governmental unit' with respect to its law enforcement activities." In narrowing the application of the TTCA in this way, UIW attempts to parcel out its law enforcement activities and claim operation as a "governmental unit", and thus, governmental immunity, for this one function. UIW contends it is a governmental unit with respect to its law enforcement activities because it derives its status and authority to operate a police department from Texas Education Code Section 51.212.

The Reduses contend this court does not hold interlocutory jurisdiction because UIW, as an institution, must satisfy the statutory definition of "governmental unit" and may not carve out its function as a police department. The Reduses contend the statute authorizing a private university to employ peace officers does not turn the university or its police department into a governmental unit. Because UIW is a private institution and does not derive its status and authority from statute, the Reduses contend it is not a governmental unit, and therefore, not entitled to bring this interlocutory appeal pursuant to Section 51.014(a)(8).

UIW's attempt to limit its qualification and operation as a governmental unit to its law enforcement activities, only, does not fit within the framework of the TTCA or the procedural context of this case. The TTCA permits interlocutory appeal from action taken on a plea to the jurisdiction filed by a governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

Thus, the party that filed the plea is the same party that must qualify as a governmental unit. In this case, the Reduses filed suit against UIW as an institution, and UIW, as an institution, filed the plea to the jurisdiction. The Reduses did not file suit against, and UIW did not file its plea as, UIW Police Department or UIW, as it acts within the context of its police department. Because Section 51.014(a)(8) permits the filing of an interlocutory appeal only by the same entity that filed a plea to the jurisdiction, and UIW filed the plea, UIW is the entity that must qualify as a "governmental unit" to be permitted this interlocutory appeal.

Pursuant to these definitions, the issue to be determined is whether UIW, a privately run university, is a "governmental unit" as defined in Section 101.001(3)(D), and thus able to take an interlocutory appeal under Section 51.014(a)(8) from the trial court's denial of its plea to the jurisdiction. To satisfy the definition of "governmental unit," UIW must derive its status and authority from statute or the Texas Constitution. The parties agree that UIW does not derive its status or authority as an institution from the Texas Constitution. Thus, this court's examination must focus on whether UIW's status and authority is conferred by legislative enactment.

*Standard of Review*

An appellate court must review whether it has jurisdiction over an appeal de novo because jurisdiction is a legal question. *See IFS Sec. Grp., Inc. v. Am. Equity Ins. Co.*, 175 S.W.3d 560, 562 (Tex. App.—Dallas 2005, no pet.); *Parks v. DeWitt Cty. Elec. Coop., Inc.*, 112 S.W.3d 157, 160 (Tex. App.—Corpus Christi 2003, no pet.). "If the record does not affirmatively demonstrate the appellate court's jurisdiction, the appeal must be dismissed." *Parks*, 112 S.W.3d at 160.

*Applicable Law*

*1. Interlocutory Jurisdiction*

In general, appellate courts have jurisdiction over appeals from final judgments, only. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001). As a narrow exception to

this rule, an interlocutory order of a trial court is appealable if explicitly authorized by Texas Civil Practice and Remedies Code Section 51.014(a). *City of Houston v. Estate of Jones*, 388 S.W.3d 663, 666 (Tex. 2012); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a). For this reason, determination whether Section 51.014(a) authorizes an interlocutory appeal is a jurisdictional issue. *See Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 841 (Tex. 2007); *Bally Total Fitness Corp.*, 53 S.W.3d at 355.

### 2. *Statutory Construction*

Section 51.014 must be strictly construed as a narrow exception to the general rule that only final judgments and orders are appealable. *See Bally Total Fitness Corp.*, 53 S.W.3d at 355; *See America Online, Inc. v. Williams*, 958 S.W.2d 268, 271 (Tex. App.—Houston [14th Dist.] 1997, no pet.). In construing a statute, a reviewing court should determine and give effect to the legislature's intent and should presume "the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). If the meaning of the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999).

### 3. *Determination of Interlocutory Jurisdiction Under Sections 51.014(a)(8) and 101.001(3)(D)*

While no court has addressed the issue whether a privately run university is a "governmental unit" as defined in Sections 51.014(a)(8) and 101.001(3)(D), the Texas Supreme Court has interpreted these same statutes to address the issue whether a privately run charter school so qualifies. *See LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 84 (Tex. 2011). Although the facts in *LTTS Charter School* are distinguishable, because it interprets the same

statutory provisions pertinent to the determination of this court's jurisdiction in the case, *LTTS Charter School* is instructive and provides applicable guidance and authority. *See e.g. Hwy 3 MHP, LLC v. Electric Reliability Council of Tex.*, 462 S.W.3d 204, 207–10 (Tex. App.—Austin 2015, no pet.) (analyzing and applying *LTTS Charter School* to issue whether electricity provider qualifies as a governmental unit).

In *LTTS Charter School*, C2 Construction asserted a breach-of-contract action against LTTS Charter School, Inc., a private non-profit corporation that operated an open–enrollment charter school called Universal Academy. *LTTS Charter Sch., Inc.*, 342 S.W.3d at 75. The Texas Supreme Court analyzed Sections 51.014(a)(8) and 101.001(3) for the issue posed in that case: whether a privately run, open-enrollment charter school is a governmental unit, and thus able to take an interlocutory appeal from a trial court's denial of its plea to the jurisdiction. *Id.* at 74–75. The supreme court ultimately concluded an open-enrollment charter school is a governmental unit because, as a charter school, it derived its status and authority from legislative enactments. *Id.* at 75. In reaching this conclusion, the supreme court began by noting, "open-enrollment charter schools . . . are indisputably part of the Texas public-education system." *Id.* at 76. Important to their "status" as a public school, the supreme court noted charter schools are "nontraditional public schools, created and governed by Chapter 12 of the Education Code," they receive government funding and comply with the state's testing and accountability system. *Id.* at 74, 76. With regard to their authority to act and conduct their business, the court found to be significant the statutory grants of authority to charter schools "of all the powers given to traditional public schools under Title 2 of the Education Code." *Id.* at 77 (citing TEX. EDUC. CODE ANN. § 12.104(a) (West 2014)). Furthermore, the supreme court held to be important the facts that charter schools: (1) "have statutory entitlements to state funding" and to services that public school districts receive; (2) are generally subject to the laws and rules pertaining to public schools; and (3) are obligated to comply

with many of the requirements of educational programs that apply to traditional public schools, including accountability programs. *Id.* at 78 (citing TEX. EDUC. CODE ANN. §§ 12.103(a), .104, .106(a)). Finally, the court noted that charter schools are subject "to a host of statutes that govern governmental entities outside the Education Code," including statutes imposing open-meetings requirements, public-information requirements, and record-regulation requirements. *Id.* at 78. When summarizing its reasoning, the supreme court stated it was confident that the Legislature considers open-enrollment charter schools to be governmental units given the enabling statute creating their existence as part of the public school system, their authority to wield the powers given to public schools, to receive and spend state tax dollars, and in many ways to function as a governmental entity. *Id.*

From *LTTS Charter School*, this court can conclude the term "derive its status and authority from legislative enactment" to mean UIW must be created by or obtain its origin from legislative enactment, as well as its authority to operate as an educational institution, which includes its police function. *Id*. at 76–77. Important factors to consider in making this determination are whether UIW, as an institution: (1) is "part of the Texas public-school system"; (2) is created by and governed by the Education Code or other statute; (3) receives statutory entitlement to state or other government funding; (4) must comply with Texas's regulatory and accountability system and rules pertaining to public schools; or (5) is granted authority of all powers given to traditional public schools. *Id*. In addition, of import is whether UIW is subject to statutes that govern governmental entities in general, such as those imposing open-meetings requirements, public-information requirements, or record-regulation requirements. *Id.* at 78.

### *Application of LTTS Charter School Factors*

To begin, a primary factor in determination whether an entity is statutorily classified as a public entity, although privately owned, is whether the entity is the functional equivalent of, or

otherwise part of, a public system, such as the public-school system of higher education in this case. *See id.* Here, UIW admits in its First Amended Answer that it is not statutorily classified as a public entity, stating, "Defendant UIW is an incorporated charitable institution created and sponsored by the Sisters of Charity of the Incarnate Word, a Catholic order of nuns. . . . The UIW is a charitable institution under both Texas and Federal law." This judicial admission establishes UIW was not created or established by Texas law, but instead originated and maintains the status of a charitable, private institution run by a Catholic order of nuns.

Of significant import, review of the Education Code reveals UIW is not statutorily classified as part of the higher education public system. Title 3 of the Education Code, which contains the provisions applicable to institutions of higher education, defines those public institutions subject to the regulations and benefits of the Education Code. Section 61.003 contains the general definitions applicable to the majority of Title 3 and defines "institution of higher education" as "any public technical institution, public junior college, public senior college or university, medical or dental unit, public state college, or other agency of higher education as defined in this section." TEX. EDUC. CODE ANN. § 61.003(8) (West Supp. 2014). UIW is not included in the individual definitions of any of these specified institutions, including "other agency of higher education." *Id.* at §§ 61.003(2)-(7).

Section 61.003(15) specifically defines "private or independent institution of higher education." *Id.* at § 61.003(15). Thus, the Education Code designates two distinct systems of higher education: the public system and the private system. By providing this separate and distinct definition of "private institutions" and portioning out private institutions from the public school system, the legislature provides strong indication that it does not intend for a privately held university to be considered a part of the public-school system as regulated under the Education Code.

Next, in *LTTS Charter School,* the supreme court placed much significance on the factor that an entity operates as a "governmental unit" if it is given taxpayer money and is statutorily entitled to services that an equivalent public entity receives. *LTTS Charter Sch., Inc.*, 342 S.W.3d at 78. As applied in this case, the Education Code begins with a general provision of applicability, stating, "[t]his code applies to all educational institutions supported in whole or in part by state tax funds unless specifically excluded by this code." TEX. EDUC. CODE ANN. § 1.001(a) (West 2012). Thus, the Education Code, itself, reiterates the importance of this factor, since the code generally applies only to those institutions receiving state tax funds. It is not disputed that UIW does not receive funding from the State of Texas nor is it statutorily entitled to services that public schools of higher education receive.

Next in analysis of the *LTTS Charter School* factors is: whether an entity "is granted authority of all powers given to traditional public schools." The powers and regulations applicable to institutions of higher education are provided in Title 3 of the Education Code. These powers are then outlined in Subtitle A, titled "Higher Education in General." Subtitle A contains subchapters which individually relegate controls and regulations, each specifically limited to an "institution of higher education" as defined in Section 61.003. As noted already, UIW is not included within this definition.

Within the context of this factor, it is important to note that the Education Code does provide UIW limited power relegated to schools within the public system. Specifically, Subtitle A contains Chapter 53A titled, "Higher Education Facility Authorities for Private Schools". TEX. EDUC. CODE ANN. § 53A.01 (West 2012). Diminutive of this authorization, though, this chapter relegates only limited authority for a private institution to act in a specific circumstance. It is not the enabling statute as anticipated by, and that existed in, *LTTS Charter School. See LTTS Charter Sch., Inc.*, 342 S.W.3d at 76–78. In addition, Chapter 53, titled "Higher Education Facility

Authorities for Public Schools," again separates the powers and authorities granted to public higher education institutions from those given to private higher education institutions. Therefore, by specific definition and limitation within the Education Code, UIW is not granted the authority of all powers relegated to "traditional public schools," but instead is provided only limited authorization to perform a specific function in a specific circumstance.

Further, Education Code Section 51.212, titled "Peace Officers at Private Institutions," from which UIW contends it derives its authority "to create and operate a law enforcement agency or police department," authorizes the governing board of a private institution to "employ and commission peace officers." Section 51.212 falls under Subchapter E, designated to regulate the "Protection of Buildings and Grounds" and authorizing employment of peace officers for the limited purposed of enforcing state law on the institution's campus. TEX. EDUC. CODE ANN. § 51.212(a)(1) (West 2012). So, while Section 51.212 does allow UIW's governing board to employ peace officers, it is not an enabling statute for the institution of UIW to operate as the equivalent of a public university, to segregate its police department as a separate and distinct entity, or to fall within the realm of the public-school system, as anticipated in *LTTS Charter School*. Rather, Section 51.212 provides authority to UIW's governing body to operate a specific and limited function also given to universities within the public school system. Again, in this limited circumstance, a school falling within the public school system has a different enabling statute for employing a peace officer. *Compare* TEX. EDUC. CODE ANN. § 51.203 (public) to § 51.212 (private).

Because this limited power is also relegated to a public institution, this factor provides some weight in favor of UIW with regard to consideration of the relevant factors. However, this limited delegation of authority does not qualify UIW as a governmental unit. Further, the supreme court in *LTTS Charter School* determined to be important the fact that an entity be "granted

- 10 -

authority of all powers given to traditional public schools. . . ." *LTTS Charter Sch., Inc.*, 342 S.W.3d at 77. UIW is not granted such authority. Of notable importance in analyzing and weighing this factor is the requirement that, to be entitled to the statutory authority granted by Section 51.212, an entity must first satisfy the definition of a "private or independent institution of higher education." TEX. EDUC. CODE ANN. § 51.212(a). Thus, the statute from which UIW claims to derive its status and authority as a governmental unit requires that it be a private or independent institution. This distinction provides indication the legislature intended only to provide an institution outside the public-school system limited authority and to maintain the private school's status as separate and distinct.

Finally, with regard to the final factor, it does appear that UIW will be subject to a statute that governs governmental entities in general with regard to exposure of public information. In particular, UIW urges this court to consider recently passed Senate Bill 308, which applies only to "a campus police department of a private university" and which becomes effective on September 1, 2015. Once enacted, Senate Bill 308, will make a private-university police department a "law enforcement agency and a governmental body" for purposes of complying with Texas Government Code Chapter 552, commonly known as the Texas Public Information Act. *See* TEX. GOV'T CODE ANN. § 552. The provision states, "[a] campus police department of a private university of higher education is a law enforcement agency and a governmental body for purposes of Chapter 552, government Code, only with respect to information relating solely to law enforcement activities." Senate Bill 308, Act of March 31, 2015, 84th Leg., R.S., ch. 300, § 1, 2015 Tex. Sess. Law Serv. (codified as TEX. EDUC. CODE ANN. § 51.212(f)).

While the newly enacted Senate Bill 308 does designate UIW's police department as a "governmental body," this designation is limited to the police department and to the purpose of compliance with a portion of the Public Information Act. The provision will be enacted in

Education Code Section 51.212, which has already been discussed and which this court has already concluded does not equate a private university, as a whole, to a governmental unit. In fact, the provision's specific limitation of its designation of a campus police department to this specific requirement under the Public Information Act reveals the legislature's intent to prevent any extension of this designation. Finally, the newly-enacted statute does not apply to this case nor weigh in UIW's favor, as it is not yet in effect. *See id.*

As a final point, in making its argument for entitlement to designation as a governmental unit limited to its police function, UIW relies upon the Texas Supreme Court's recent opinion, *Rice Univ. v. Refaey*, 459 S.W.3d 590 (Tex. 2015). The primary issue in *Rice University v. Refaey* is "whether a private university peace officer is an 'officer or employee of the state' that may invoke a court of appeals' interlocutory jurisdiction under Texas Civil Practice and Remedies Code section 51.014(a)(5)." *Rice Univ. v. Refaey*, 459 S.W.3d at 591. As in this case, the *Rice University v. Refaey* opinion interpreted the statute implicated to confer interlocutory appellate jurisdiction. *See id.*

While informative, *Rice University v. Refaey* is distinguishable based upon the statute utilized to confer interlocutory jurisdiction, and therefore, its holding is difficult to apply to the jurisdictional issue before this court. Under similar facts, Plaintiff Refaey sued Rice University, a private university, and its police officer, Gary Spears, based upon incidents leading to and resulting from a traffic stop and Refaey's arrest. *Id.* Rice University and Officer Spears moved for summary judgment asserting Officer Spears' official immunity from suit. When the trial court denied summary judgment, Rice University and Officer Spears sought interlocutory appeal pursuant to Section 51.014(a)(5), which grants authority to appeal an interlocutory order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state. . . ." *Id.* The supreme court concluded an officer of a private university

is an "officer of the state" as that term is used in Section 51.015(a)(5) to confer interlocutory jurisdiction. *Id.*

We recognize UIW attempts to apply *Rice University v. Refeay* as an indication of the Texas Supreme Court's and the legislature's intent to cast a broad net over entities that satisfy the definition of "governmental unit". However, the supreme court interpreted Section 51.014(a)(5), a different provision than what is at issue in this case. The supreme court did not interpret the term "governmental unit" or determine whether a private university qualifies as such. For this reason, the supreme court's analysis and conclusion in *Rice University v. Refeay* are not applicable to the principal jurisdictional issue to be determined in this case.

Following the application and weight of the factors outlined in *LTTS Charter School* and after consideration of the Texas Supreme Court framework to determine legislative intent in construction of Section 51.014(a)(8), we conclude UIW does not satisfy the definition of "governmental unit" as that phrase is defined in Section 101.001(3)(D). Specifically, UIW is not "part of the Texas public-school system"; receives no statutory entitlement to state or other government funding; is not compelled to comply with Texas's regulatory and accountability system and rules pertaining to public schools, and; is not granted authority of all powers given to traditional public schools. While UIW is granted limited power to employ peace officers, also given to public institutions, and this weighs in its favor, this power is separate and distinct from that granted to a public institution and when weighed in consideration of the other factors, is not sufficient to pull UIW under the statutory definition of "governmental unit."

As a final matter, although UIW appeals the trial court's denial of its motion to dismiss, a party may only pursue an interlocutory appeal from action on a plea to the jurisdiction under Section 51.014(a)(8). TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8). Therefore, to the extent

UIW asserts appeal from the trial court's denial of its motion to dismiss, this appeal is dismissed for want of jurisdiction.

## CONCLUSION

In light of the guidance provided in *LTTS Charter School* and after application of the factors noted as important indicia of entities qualifying as a governmental unit, we conclude UIW is not a governmental unit to be entitled to bring this interlocutory appeal under Texas Civil Practice and Remedies Code § 51.014(a)(8).  For this reason, the trial court's denial of UIW's plea to the jurisdiction is not an appealable interlocutory order.  Accordingly, UIW's appeal is dismissed for want of jurisdiction.  UIW's appeal from the trial court's denial of its motion to dismiss is not an appealable interlocutory order, and accordingly is dismissed for want of jurisdiction.

Jason Pulliam, Justice