**UNIVERSITY OF THE INCARNATE WORD, Petitioner,**

v.

**Valerie REDUS, et al., Respondents**

No. 15-0732

Supreme Court of Texas.

Argued December 7, 2016

Opinion Delivered: May 12, 2017

Laurence S. Kurth, Matthew F. Wymer, Akerman, LLP, San Antonio, Amy Warr, Wallace B. Jefferson, Alexander Dubose Jefferson & Townsend LLP, Austin, for Petitioner.

Brent C. Perry, Robert R. Burford, Burford Perry, LLP, Houston, Frank Herrera Jr., Jorge A. Herrera, The Herrera Law Firm, San Antonio, Mason W. Herring, Herring Law Firm, Houston, for Respondent.

Justice Devine delivered the opinion of the Court.

The Texas Civil Practice and Remedies Code provides for an interlocutory appeal

from an order that "grants or denies a plea to the jurisdiction by a governmental unit." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). The term "governmental unit" has the same meaning here as it does in the Texas Tort Claims Act. *Id.* §§ 51.104(a)(8), 101.001 (defining the term). The issue we must decide is whether a private university that operates a state-authorized police department is such a "governmental unit." If it is, the university can pursue this interlocutory appeal from the trial court's order denying the university's plea to the jurisdiction. The court of appeals concluded, however, that the university is not a governmental unit and dismissed the appeal. 474 S.W.3d 816, 817 (Tex. App.—San Antonio 2015). Because we conclude that the university is a governmental unit for purposes of this interlocutory appeal, we reverse and remand.

I

Though University of the Incarnate Word (UIW) is a private university, it maintains a campus police department. The Legislature has authorized private institutions of higher education to employ and commission peace officers and operate police departments. TEX. EDUC. CODE § 51.212(a). This case arises from a UIW officer's use of deadly force following a traffic stop. The incident resulted in the death of Cameron Redus, a UIW student the officer pulled over on suspicion of driving while intoxicated.

 Redus's parents sued UIW and the officer for their son's death. UIW raised governmental immunity as a defense in its answer and later asked the trial court to dismiss the suit in a plea to the jurisdiction. The trial court denied the plea, and UIW took an interlocutory appeal under section 51.014(a)(8) of the Civil Practice and Remedies Code.[1] That provision authorizes an interlocutory appeal from an order granting or denying a governmental unit's plea to the jurisdiction. Although UIW does not claim to be a governmental unit generally, it contends it is a governmental unit when defending the actions of its police department. The court of appeals disagreed and dismissed the appeal. 474 S.W.3d at 825. We granted UIW's petition for review.[2]

II

Because section 51.014(a)(8) authorizes an interlocutory appeal from the grant or denial only of a governmental unit's plea to the jurisdiction, and UIW filed the plea in this case, UIW must be a governmental unit to pursue this appeal. Section 51.014(a)(8) defines "governmental unit" by reference to the Tort Claims Act, so we must look there for its definition. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). The Tort Claims Act defines "governmental unit" as

(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

---

1. "A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that ... grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

2. Although interlocutory appeals are generally final in the court of appeals, *see* TEX. GOV'T CODE § 22.225(b)(3), we always have jurisdiction to determine whether the court of appeals properly exercised its jurisdiction. *Univ. of Tex. Sw. Med. Ctr. of Dall. v. Margulis*, 11 S.W.3d 186, 187 (Tex. 2000) (per curiam).

(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

(C) an emergency service organization; and

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*Id.* § 101.001(3)(A–D). UIW claims to be a governmental unit only under subpart D. To qualify as a governmental unit under the Tort Claims Act, then, UIW must satisfy subpart D's two conditions. First, UIW must be an "institution, agency, or organ of government," and, second, UIW must derive its "status and authority . . . from the Constitution of Texas or from laws passed by the legislature under the constitution." *Id.* § 101.001(3)(D).

UIW concedes that, as a private university, it is not generally a "governmental unit." But UIW argues that a private entity can be a governmental unit for certain purposes and that it is a governmental unit when defending lawsuits arising from its law-enforcement function. UIW contends it is a governmental unit for purposes of defending its campus police department because its "status and authority" to "create a law enforcement agency or police department" arise from laws passed by the Legislature that allow private universities to commission and deploy peace officers to enforce criminal laws. TEX. EDUC. CODE § 51.212.

The Reduses respond that UIW is a private institution and that no state law makes UIW a part of the government. Rather, the statute authorizing UIW to commission and employ peace officers "requires that [UIW] be a private or independent institution." 474 S.W.3d at 823 (citing TEX. EDUC CODE § 51.212). The Reduses submit that previous cases recognizing ostensibly private institutions to be governmental units have relied on express statutory authority to that effect. *See, e.g., LTTS Charter Sch., Inc. v. C2 Constr., Inc.,* 342 S.W.3d 73, 77 (Tex. 2011) (citing TEX. EDUC. CODE § 12.105); *Klein v. Hernandez,* 315 S.W.3d 1, 8 (Tex. 2010) (citing TEX. HEALTH & SAFETY CODE § 312.006(b)). The Reduses argue that no comparable authority exists here.

The parties focus therefore on different aspects of subpart D's definition. TEX. CIV. PRAC. & REM. CODE § 101.001(3)(D). Relying on the latter portion of the subpart, UIW argues it is a governmental unit because state law gives it the status and authority to create a police department and enforce state and local law—a governmental function. Relying on the subpart's first requirement, the Reduses counter that no state law makes UIW an "institution, agency, or organ of government," and that the Legislature. has conditioned its authorization of UIW to operate a police department on UIW's status as a private institution.

Although private institutions are not commonly understood to be a part "of government," we have held that a private institution can be a governmental unit. In *LTTS Charter School,* we determined that a private charter school was a governmental unit entitled to an interlocutory appeal under section 51.014(a)(8). 342 S.W.3d at 82. In reaching this conclusion, we pointed

to specific legislative grants of authority to open-enrollment charter schools, including the grant of all powers given to traditional public schools under Title 2 of the Education Code. *Id.* at 77 (citing TEX. EDUC. CODE § 12.104(a)). We commented further that open-enrollment charter schools "have statutory entitlements to state funding" and services that "school districts receive," are generally subject to the laws and rules pertaining to public schools, and are obligated to comply with many of the requirements of educational programs that apply to traditional public schools, including accountability programs. *Id.* at 77–78 (citing TEX. EDUC. CODE §§ 12.103(a), .104, .106(a)). In addition, we noted that open-enrollment charter schools are subject "to a host of statutes that govern governmental entities outside the Education Code," including statutes imposing open-meetings requirements, public-information requirements, and record-regulation requirements. *Id.* at 78 (citing TEX. EDUC. CODE §§ 12.1051, .1052). We noted further that the Legislature expressly granted open-enrollment charter schools the same immunity from liability school districts have. *Id.* at 78 n.44. And we explained that open-enrollment charter schools are expressly considered "governmental entit[ies] for . . . [statutes] relating to property held in trust and competitive bidding," "political subdivision[s] for . . . [statutes concerning] procurement of professional services," and "local government[s] for . . . [statutes governing] authorized investments." *Id.* at 78 (internal quotes omitted) (citing TEX. EDUC. CODE § 12.1053). Finally, we expressed "confiden[ce] that the Legislature considers" open-enrollment charter schools "institution[s], agenc[ies], or organ[s] of government" under subsection 101.001(3)(D) given their statutory status as part of the public-school system, "their authority to wield" the powers given to public schools, and their right to "receive and spend state tax dollars (and in many ways to function as a governmental entity)." *Id.* (internal footnotes omitted) (citing TEX. EDUC. CODE §§ 12.104(a), .105–.107, .1053).

Relying on this discussion from *LTTS Charter School*, the court of appeals identified several factors as relevant to UIW's status as a governmental unit and applied those factors to hold that UIW was not a governmental unit. *See* 474 S.W.3d at 821–24 (listing factors). The court concluded that UIW's authority to commission and employ peace officers did not overcome several other factors indicating that UIW was not a governmental unit, such as the fact that "UIW is not 'part of the Texas public-school system'; receives no statutory entitlement to state or other government funding; is not compelled to comply with Texas's regulatory and accountability system and rules pertaining to public schools, and; is not granted authority of all powers given to traditional public schools." *Id.* at 824.

UIW complains that the court of appeals erroneously applied *LTTS Charter School.* The court missed the mark, UIW contends, because it focused on whether UIW is part of the public-education system instead of on whether UIW's police department is part of Texas's law-enforcement system. UIW maintains that the court should have limited its analysis to the university's law-enforcement function because it does not contend to be a governmental unit generally but only in cases regarding its police department.

UIW submits that it is part of the state's system of law enforcement because its campus police must have the same license and meet the same requirements as any other peace officer in the state. TEX. OCC. CODE § 1701.301. UIW's officers can enforce state law on campus and state and local law at other locations as permitted by the Texas Education Code. TEX. EDUC.

CODE § 51.212(a). Moreover, UIW officers have the powers, privileges, and immunities of peace officers when on the property of the university, when performing duties assigned by the university, when in a county in which the university has land, or to the extent authorized by Section 51.2125 of the Texas Education Code.[3] *Id.* § 51.212(b). Campus police officers take the peace officer's oath and must post bond with the Governor of Texas. *Id.* § 51.212(c). And, with respect to information relating to law-enforcement activities, campus police departments of private institutions are law-enforcement agencies and governmental bodies for the purposes of the Public Information Act. *Id.* § 51.212(f). Thus, although the university and its police department lack public funding, UIW argues it is a governmental unit as to its policing function because the Legislature created the authority by which it can commission officers, its officers have the same powers as officers commissioned by public entities, and UIW's police department is subject to the same regulations as other police departments.

UIW emphasizes that law enforcement is a quintessentially governmental function and that this weighs in favor of its status as a governmental unit. The Tort Claims Act, according to UIW, supports this argument because it lists police and fire protection first among the governmental functions "enjoined on a municipality by law and ... given by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general

public." TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(1).

UIW recognizes, however, that not all of the indicators of governmental-unit status present in *LTTS Charter School* are present here. For one thing, unlike an open-enrollment charter school, UIW receives no public funding for its police department. *LTTS Charter School,* 342 S.W.3d at 77. For another, the Education Code expressly declares open-enrollment charter schools to be "part of the public school system of this state," but no comparable declaration makes UIW's campus police department a part of any state system. *Id.* Finally, the Legislature expressly granted open-enrollment charter schools immunity from liability, implying "legislative recognition of 'governmental unit' status," but no comparable grant of general immunity exists here. *Id.* at 78 n.44.

### III

■ To be a governmental unit under the Tort Claims Act, UIW must (1) be an "institution, agency, or organ of government" and (2) derive its "status and authority" as such from "laws passed by the Legislature." TEX. CIV. PRAC. & REM. CODE § 101.001(3)(D). Here, UIW clearly derives its status and authority to commission and employ peace officers and operate a police department from laws passed by the Legislature. *See* TEX. EDUC. CODE § 51.212 (authorizing private universities to operate police departments). The question is whether UIW is an "institution, agency, or organ of government."

---

**3.** Section 51.2125 authorizes certain institutions of higher education to enter mutual assistance agreements with certain municipalities. TEX. EDUC. CODE § 51.2125(b). Under mutual assistance agreements, officers commissioned by the private institution assist the officers of the municipality in enforcing state and local law. *Id.* Although the Edu-

cation Code circumscribes the authority of private-university police officers, the Texas Code of Criminal Procedure considers them peace officers, TEX. CODE CRIM. PROC. art. 2.12(8), and such officers may make warrantless arrests anywhere in Texas, *id.* art. 14.03(d).

Because the statute does not further define these terms, we look to the terms' common meaning. *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015). The Oxford English Dictionary defines organ as a "body of persons or thing by which some particular purpose is carried out or some function is performed." *Organ*, THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY (1971). The New Oxford American Dictionary defines organ as "a department or organization that performs a specified function." *Organ*, THE NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010). And Webster's Third New International Dictionary defines organ as "an instrumentality exercising some function or accomplishing some end" and "a governmental instrumentality operating as part of a larger organization." *Organ*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002). These definitions indicate that an "organ of government" is an entity that operates as part of a larger governmental system.

Our case law confirms that the question here is whether UIW's campus police department is part of a larger governmental system and provides a framework for answering that question. In *LTTS Charter School*, we concluded that a private charter school was an "institution, agency or organ of government" based on a legislative scheme that made private charter schools part of the Texas public-education system. 342 S.W.3d at 76–78. Many of the same indicators of governmental-unit status present in *LTTS Charter School* are present here. For example, the Legislature granted charter schools all of the powers and privileges of public schools, *id.* at 77 (citing TEX. EDUC. CODE § 12.104(a)), and here it has given UIW the power to operate a police department like that of any city, TEX. EDUC. CODE § 51.212(b). Like the charter school, UIW must follow the same state-promulgated rules its public counterparts follow:

- To create a police department, a private university must apply for state approval and include information about its resources and capabilities in its application. 37 TEX. ADMIN. CODE § 211.16.

- Private universities can employ only state-licensed peace officers. TEX. OCC. CODE § 1701.301; 37 TEX. ADMIN. CODE § 223.2(c)(1).

- Private-university police departments must submit to the same audits as other police departments. 37 TEX. ADMIN. CODE §§ 211.26, 223.2(c).

Moreover, like state and local law-enforcement agencies, UIW must make certain records available for public review because UIW's police department is a governmental entity under the Public Information Act. TEX. EDUC. CODE § 51.212(f). And, though the Legislature has not granted private universities immunity from liability generally, as they did charter schools, the Legislature has granted limited immunity to private universities when their officers act pursuant to mutual assistance agreements with local police departments. *Id.* §§ 51.212(b)(2), .2125.

But the indicators of governmental-unit status present in *LTTS Charter School* do not precisely match those present here. Unlike the charter school, UIW lacks public funding, and the Legislature does not consider UIW a governmental entity under the Government Code and Local Government Code provisions relating to property held in trust and competitive bidding. *LTTS Charter School*, 342 S.W.3d at 78 (citing TEX. EDUC. CODE § 12.1053). Moreover, the Legislature's intended role for private universities in public law enforcement is less clear than its express inclusion of open-enrollment charter schools in the public-school system. *See id.* at 77 (citing legislation declaring open-enrollment char-

ter schools to be "part of the public school system of this state").

Nevertheless, the Legislature has authorized UIW to enforce state and local law using the same resource municipalities and the State use to enforce law: commissioned peace officers. UIW's officers have the same powers, privileges, and immunities as other peace officers. TEX. EDUC. CODE § 51.212(b). Because law enforcement is uniquely governmental, the function the Legislature has authorized UIW to perform and the way the Legislature has authorized UIW to perform it strongly indicate that UIW is a governmental unit as to that function. We accordingly conclude that UIW is a governmental unit for purposes of law enforcement and that UIW is therefore entitled to pursue an interlocutory appeal under section 51.014(a)(8) of the Civil Practice and Remedies Code.

█ Our conclusion that UIW is a governmental unit is not a comment on the merits of UIW's plea to the jurisdiction. Although UIW argues that it enjoys immunity from suit and liability when sued for actions related to its law-enforcement function, that issue is not before us. The issue of immunity is instead for the court of appeals and will implicate principles of sovereign immunity that have had no bearing on our analysis here. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 432 (Tex. 2016) (noting that sovereign immunity is a common-law doctrine and that courts determine whether an entity is immune in the first instance); *see also Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 375 (Tex. 2006) (noting that "it remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance"). To determine whether an entity is immune, courts should rely not on the Tort Claims Act's definition of governmental unit, as we have here, but on the "nature and purposes" of sovereign immunity. *Wasson Interests*, 489 S.W.3d at 432. In short, whether an entity is entitled to an interlocutory appeal and whether an entity has sovereign immunity are separate questions with separate analytical frameworks.

As we did in *LTTS Charter School*, "[w]e leave undecided the separate issue of whether [UIW] is immune from suit." 342 S.W.3d at 78 n.44. The issue we decide is one of appellate jurisdiction only: Did the court of appeals have jurisdiction to consider UIW's interlocutory appeal? It did. Accordingly, we reverse the court of appeals' judgment and remand for it to resolve UIW's interlocutory appeal.