COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ASM GLOBAL, LLC D/B/A DESTINATION EL PASO and ASM GLOBAL PARENT, INC., | § § | No. 08-24-00044-CV |
| Appellant, | § | Appeal from the |
| v. | § | 120th Judicial District Court |
| | § | of El Paso County, Texas |
| JESSICA WEAVER, Individually and as Representative of the Estate of A.M., a minor, | § § | TC# 2023DCV2119 |
| Appellee. | § | |

# **O P I N I O N**

Appellant ASM Global, LLC d/b/a Destination El Paso (ASM) appeals the denial of its plea to the jurisdiction. In two issues, ASM contends the trial court erred in failing to recognize its entitlement to governmental immunity, either as a purported arm of city government, or as derivatively established due to its operation of certain governmental functions. In a third issue, ASM alternatively argues the trial court erred in impliedly finding that Appellee Jessica Weaver had affirmatively demonstrated it had waived its governmental immunity. We dismiss the appeal for lack of jurisdiction.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 2020, the City of El Paso (the City) solicited bids for operation and management of "Visit El Paso," the City's tourism and marketing department that manages several city-owned facilities. The City soon contracted with ASM, a venue-management company operating in North America, Europe, Asia, and Latin America, which specializes in the management of stadiums, convention centers, theaters, and other venues.[1] As per the Facility Management and Tourism Agreement (the Agreement), the City contracted with ASM to manage and operate the City's Convention and Visitors' Bureau, its Destination Marketing Organization, and certain City-owned properties to include Camp Cohen Water Park, a newly built water park/aquatic facility of the City. Article 2.1 of the Agreement provided as follows:

> Grant of Authority. [The City] hereby grants to [ASM], and [ASM] hereby accepts, the exclusive right and obligation, in its own name, as an independent contractor and not as an agent of [the City], to provide those management and tourism services to [the City] as are set forth in this Agreement in connection with [ASM's] management, operation, marketing and administration of Estimation El Paso and, in connection therewith, to perform or furnish or cause to be performed or furnished, subject to the provisions hereof, and subject to the availability of funds, all of such services upon the terms and subject to the limitations of this Agreement.

Among other terms, the Agreement further provided that ASM "shall retain control of," and "the exclusive authority with respect to the management, operation, marketing and administration of" Destination El Paso. Additionally, it provided that "[n]either Party shall be subject to any obligations or liabilities of the other Party."

---

[1] The Agreement provides that the City originally contracted with SMG, Pennsylvania General Partnership. ASM subsequently merged with or bought out SMG.

On May 13, 2023, Jessica Weaver and her son, A.M., who was then three-years old, visited Camp Cohen Water Park during its "soft opening." While there, A.M. suffered from drowning and died soon thereafter. Weaver sued ASM alleging claims of negligence and gross negligence in connection with her son's death.[2] In support of her claims, Weaver alleged the water park was overcrowded and understaffed; that life vests were only made available on a "first come, first serve basis;" no such life-vest was available for her son's use; and, that outside arm-flotation devices were not allowed per facility policies. Her suit alleged that A.M. died as a proximate result of ASM's lack of policies requiring that children wear life vests, its lack of proper monitoring of the several pools of the facility, and its lack of training and supervision in general.

ASM responded with a plea to the jurisdiction asserting its entitlement to governmental immunity, and it further asserted that no immunity waiver applied. Specifically, ASM urged it should be deemed an organ of government—based on its operation and management of a department of a city government—and, thus, it should be held immune from torts committed in its performance of governmental functions including the operation of recreational facilities. The trial court denied ASM's plea by a general order.

ASM filed a notice of interlocutory appeal pursuant to § 51.014 (a)(8) of the Texas Civil Practice and Remedies Code.[3]

---

[2] Weaver also originally included the City as a defendant but subsequently nonsuited those claims.

[3] Two weeks after filing its notice of appeal, ASM next filed a motion to stay trial court proceedings pending the outcome of the appeal pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 51.014(b). After we denied its motion for a stay, ASM filed a petition for writ of mandamus with the Texas Supreme Court wherein it challenged that ruling. The Texas Supreme Court initially granted an emergency stay pending its review, but subsequently denied ASM's petition and lifted its emergency stay. *In re ASM Global, LLC d/b/a Destination El Paso*, Case No. 24-0232 (June 21, 2024).

## II. STANDARD OF REVIEW

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *see also Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). The existence of a court's subject-matter jurisdiction is a question of law reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Miranda*, 133 S.W.3d at 226, 228; *City of Wylie v. Taylor*, 362 S.W.3d 855, 859 (Tex. App.—Dallas 2012, no pet.).

## III. APPELLATE JURISDICTION

By her response, Weaver asserts this Court lacks appellate jurisdiction over ASM's interlocutory appeal. She contends it does not meet the requirements of § 51.014(a)(8) of the Civil Practice and Remedies Code, on which ASM relies.

As a preliminary matter, we first address our jurisdiction over the appeal.

### A. Applicable law

"[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 526 S.W.3d 693, 698 (Tex. App.—Houston [14th Dist.] 2017), aff'd, 571 S.W.3d 738, 741 (Tex. 2019) ("The legislature . . . has specified circumstances in which a litigant may appeal immediately from an otherwise unappealable order because a final judgment had not been rendered."). Here, citing to § 51.014(a)(8), ASM relies on the statutory provision permitting appeals of an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in [Texas Civil Practice and Remedies Code] Section 101.001." *See* Tex. Civ. Prac. & Rem. Code

§ 51.014(a)(8). Based on this provision, our appellate jurisdiction depends entirely on whether ASM qualifies as a "governmental unit[]" within the meaning of the term. *See id.*

Applicable to all of Chapter 101, the term "Governmental unit" is defined as:

(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

(B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

(C) an emergency service organization; and

(D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

Tex. Civ. Prac. & Rem. Code § 101.001(3). In this instance, ASM relies solely on subsection D, "a category with a 'broad definition' of 'governmental unit.'" *City of Leon Valley Econ. Dev. Corp. v. Little*, 422 S.W.3d 37, 40 (Tex. App.—San Antonio 2013, no pet.) (quoting *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 76 (Tex. 2011)).

Under this provision, a two-prong test applies. "To be a governmental unit under [Subsection D, an entity] must (1) be an 'institution, agency or organ of government' and (2) derive its 'status and authority' as such from 'laws passed by the Legislature.'" *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 909 (Tex. 2017) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(D)). As for the first prong, the Texas Supreme Court has interpreted the phrase "institution, agency, or organ of government" as having a broad meaning that encompasses any "entity that operates as part of a larger governmental system." *Id.* at 910–11. And to satisfy the

5

second prong, "the entity asserting immunity from suit must have a legislative or constitutional source from which it derived its status and authority." *Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 77 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *LTTS Charter Sch., Inc.*, 342 S.W.3d at 76, 81).

## B. Analysis

Beginning with the "status and authority" prong of the two-part test, ASM asserts it derives its status and authority from legislation that authorizes the City to contract with a party to operate the City's convention, tourism, and marketing department. In doing so, it points to multiple provisions of the Local Government Code authorizing a municipality to spend funds on advertising, as well as promotion of its growth and development, which are conditioned on the municipality creating a citizen's advisory board before authorized to do so. *See* Tex. Local Gov't Code Ann. §§ 371.001, .004. Additionally, ASM contends the Tax Code authorizes it to both hold and expend revenues for similar purposes which are generated from Hotel and Occupancy Taxes. *See* Tex. Tax Code Ann. § 351.101(c). Specifically, it urges that, because the Tax Code places conditions on who and how these tax revenues may be spent, this provision must mean that a private entity holding such funds on behalf of a municipality is deemed a special contractor. Based on contract terms, ASM heavily points to duties it must perform for the City in its operation of its facilities. These include the preparation of an annual budget subject to the City's approval, providing reports as requested, and keeping and maintaining complete and accurate financial records, which are subject to audit. *See id.* §§ 351.101(d), .108(c). Finally, ASM asserts that home-rule municipalities, like the City, derive their governmental authority from the Texas Constitution, and consistent with that authority, the legislature has specifically authorized municipalities to "supervise" recreational facilities and programs. *See* Tex. Local Gov't Code Ann. § 332.002. In

sum, ASM asserts it qualifies as "a governmental unit," as contemplated by § 101.001(3) (D), because it derives its status and authority as a supervisee of the City from laws passed by the legislature under the constitution. Notwithstanding these claims, we disagree based on guidance we draw from recent cases of the Texas Supreme Court.

In two cases, the Supreme Court addressed the meaning of the term "governmental unit" when the term is applied to a private entity performing governmental functions. First, the Court held that a private university operating a state-authorized police department qualifies as a governmental unit when defending suits related to the department's functions. *See Redus*, 518 S.W.3d at 906. Although private universities do not receive public funding and are not statutorily labeled as governmental entities for any particular purposes, nonetheless, certain state statutes grant private universities the "status and authority" to operate a police department using commissioned peace officers and to subject them to state law-enforcement rules and requirements. *Id.* at 909, 910–11 (citing Tex. Educ. Code Ann. § 51.212). On this basis, the Supreme Court determined the university at issue qualified as an "organ of government" for purposes of its police department, because it "operates as part of a larger governmental system," and it performs the "uniquely governmental" function of law enforcement. *Id.*

Second, in *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 615–17 (Tex. 2023), the Texas Supreme Court held the Electric Reliability Council of Texas, Inc. (ERCOT) similarly qualified as an "organ of government." As such, it met the statutory definition of a governmental unit authorized to seek an interlocutory appeal from the denial of a plea to the jurisdiction. *Id.* There, the Court noted the Public Utility Regulatory Act (PURA) required the Public Utility Commission (PUC) to "establish one or more independent organization" to serve as the region's independent system operator (ISO). *Id.* at 617. By this scheme, PURA granted

certified ISOs authority to supervise the region's power and transmission facilities and to coordinate its market transactions, transmissions planning, and network reliability. *Id.* (citing Tex. Util. Code Ann. §§ 31.002(9), 39.151). The Court held that, ERCOT, as a certified ISO, performed a "uniquely governmental" function as part of a "larger governmental system," through its authority to "adopt and enforce rules relating to the reliability of the regional electrical network." *Id.* at 616. Although ERCOT remained a private, nonprofit corporation, the Court held its status as an ISO for the Texas power region, and its "authority" to act in that capacity, were derived directly from PURA. *Id.* Because ERCOT was recognized as an organ of government whose status and authority derived from a statute, the Court found it was entitled to seek an interlocutory appeal from the denial of its plea to the jurisdiction. *Id*. at 617 (citing Tex. Civ. Prac. Rem. Code Ann. § 101.001(3); *id*. § 51.014(a)(8)).

But here, in contrast with both *Redus* and *CPS Energy*, there is no similar statute from which ASM's authority is derived. The statutes on which it relies only grant authority to municipalities to contract with and hire persons to operate certain of their promotional activities. In accord with that authority, the City contracted with ASM to operate Camp Cohen Water Park, among its other facilities. But that contractual privity alone does not suffice to alter ASM's legal status and authority. *See City of New Braunfels v. Carowest Land, Ltd.*, 578 S.W.3d 668, 676 (Tex. App.—Austin 2019, no pet.) ("Nor are we persuaded that the existence of statutes authorizing the City to enter into contracts with private entities satisfies section 101.001's requirement that an entity's status and authority be "derived from the Constitution of Texas or from laws passed by the legislature under the constitution."). Here, ASM derives its authority from its contract with the City, not from the Texas Constitution or from laws passed by the legislature under a constitutional provision. And by the contract's terms, ASM is *not* an employee or agent of

8

the City, but instead it remains an independent contractor. ASM thus fails to meet the status-and-authority prong of the test, and there is no need to address the other prong. *See Redus*, 518 S.W.3d at 909.

As an alternative basis, ASM lastly asserts it has been sued in its capacity as an agent of a governmental unit, wherein it performs a governmental function on the City's behalf and for which the City enjoys immunity. On this basis, it contends it may assert immunity under *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 742 (Tex. App.—Houston [1st Dist.] 2010, no pet.). But we disagree that *Ross* applies to this jurisdictional inquiry.

In *Ross*, the First Court of Appeals applied an alternative test to determine its appellate jurisdiction. *Id*. at 740. In doing so, it considered whether the law firm stood in as (1) the equivalent of a "state official," and (2) the capacity in which the plaintiff sued the law firm. *Id.* at 742. The appellate court concluded it could exercise jurisdiction over the appeal because the law firm stood "as the equivalent of a state official or employee," as the pleadings alleged the law firm, and its employees were agents of various governmental units. *Id.* Our sister court determined that plaintiff's pleadings asserted no facts indicating the taxing entities controlled the details of the tax-collecting tasks performed by the law firm. *Id.* Although the plaintiff shouldered an evidentiary burden, *Ross* found she had not presented evidence disproving the law firm's claim it stood as the equivalent of a state official or employee while performing its work. *Id*.

As relevant here, *Ross* did not base its jurisdictional determination on considering the meaning of "governmental unit" as set out in § 101.001(3)(D). *Id*. Instead, *Ross* relied on *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007), a Texas Supreme Court case holding an appellate court could exercise jurisdiction to consider a government official's appeal of the denial of his plea to the jurisdiction based on the official's assertions of sovereign immunity. *Ross*,

9

333 S.W.3d at 742. *Koseoglu* explained that construing § 51.014(a)(8) to exclude state officials would draw an artificial distinction between pleas filed by governmental entities and pleas filed by state officials asserting the entities' sovereign immunity from suit. 233 S.W.3d at 844. The Court reiterated that "[a] suit against a state official in his official capacity is *not* a suit against the official personally, for the real party in interest is the [governmental] entity." *Id.* (internal quotations omitted). *Id.*

But as applicable to ASM, its capacity is distinguishable from *Ross*. There, the plaintiff had pleaded that the law firm acted as agent of the governmental units involved in the case, and the appellate court relied on the pleading to support its conclusions determining the law firm had acted as the equivalent of a state official, that all of the plaintiff's claims were related to actions taken in the process of collecting taxes on behalf of the governmental entities, and thus the court could exercise jurisdiction over the appeal. *Ross*, 333 S.W.3d at 742–44. Here, there is not only an absence of similar pleadings, but the record instead supports an opposite conclusion given the Agreement between ASM and the City expressly provides that ASM acts "in its own name, as an independent contractor and not as an agent of [the City]."

Accordingly, without any constitutional or statutory provision conferring status and authority on ASM, which is derived from the Constitution of Texas or from laws passed by the legislature under the constitution, we conclude it does not qualify as a governmental unit under Subsection D. *See* Tex. Civ. Prac. & Rem. Code § 101.001(3)(D). Because ASM is not deemed a governmental unit for purposes of §51.014(a)(8), our interlocutory jurisdiction is not properly invoked. *See Orion Real Estate v. Sarro*, 559 S.W.3d 599, 603 (Tex. App.—San Antonio 2018, no pet.) (holding a private company hired as an independent contractor to manage apartments developed by housing authority was not a governmental unit); *see also 152 Lakewest Cmty., LP v.*

10

*Ameristar Apartment Services, L.P.*, No. 05-20-00483-CV, 2021 WL 5710553, at *3 (Tex. App.—Dallas Dec. 2, 2021, no pet.) (mem. op.) (holding private company hired to carry out housing authority's functions was not a governmental entity absent statutory authority); *AECOM USA, Inc. v. Mata*, No. 04-15-00773-CV, 2016 WL 5112222, at *2, *4 (Tex. App.—San Antonio Sept. 21, 2016, pet. denied) (mem. op.) (concluding a private contractor hired by a state agency was not a "governmental unit" under Section 101.0013 and dismissing the appeal for lack of jurisdiction).

## IV. CONCLUSION

For the foregoing reasons, we dismiss this appeal for lack of jurisdiction. ASM's renewed motion to stay trial court proceedings is denied.

GINA M. PALAFOX, Justice

October 4, 2024

Before Alley, C.J., Palafox, and Soto, JJ.