FILED
18-0351
5/22/2020 2:52 PM
tex-43191602
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# IN THE SUPREME COURT OF TEXAS

No. 18-0351

UNIVERSITY OF THE INCARNATE WORD, PETITIONER,

v.

VALERIE REDUS, ET AL., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

**Argued December 4, 2019**

JUSTICE BLAND delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE BOYD, JUSTICE DEVINE, JUSTICE BLACKLOCK, and JUSTICE BUSBY joined.

CHIEF JUSTICE HECHT filed a dissenting opinion.

The Education Code authorizes private universities to commission and employ peace officers.[1] The code specifies that commissioned peace officers have official immunity.[2] But the code does not purport to extend sovereign immunity to the officers' private university employers. More than twenty universities have established police departments under the code, including the petitioner in this case, the University of the Incarnate Word. In 2013, a University peace officer

---

[1] TEX. EDUC. CODE § 51.212(a).

[2] *See id.* § 51.212(b) ("Any officer commissioned under the provisions of this section is vested with all the powers, privileges, and immunities of peace officers . . . .").

fatally shot Cameron Redus, a University student, following a traffic stop. His parents sued the officer and the University.

To date, this case has turned on whether the University has sovereign immunity when it is sued in connection with its law-enforcement activities. We previously held that the University may appeal from the adverse ruling on its jurisdictional plea of governmental immunity.[3] We remanded this case to the court of appeals, however, to separately consider whether the State's sovereign immunity extends to the University. The court of appeals held that it does not.[4]

Though we have contemplated it, we have yet to extend sovereign immunity to a purely private entity—one neither created nor chartered by the government—even when that entity performs some governmental functions.[5] In declining to do so, we examined whether the entity acted as an arm of the State government and whether affording it sovereign immunity fits within the doctrine's underlying nature and purposes.[6]

As a private entity, the University does not act as an arm of the State in its overall operations.[7] And though the University's law enforcement activities benefit the public, its arguments for extending sovereign immunity do not comport with the doctrine's historic

---

[3] *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017).

[4] 580 S.W.3d 184, 193 (Tex. App.—San Antonio 2018).

[5] *See Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 750 (Tex. 2019) ("Serving public purposes, as many nonprofits and public contractors do, does not ipso facto equate to status as a governmental entity for governmental immunity purposes.").

[6] *Id.* ("The common-law rule of immunity is exclusively for the judiciary to define, and in doing so, we do not just consider whether the entity performs governmental functions, but also the 'nature and purposes' of immunity." (quoting *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 432 (Tex. 2016))).

[7] *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 325–26 (Tex. 2006) ("[W]here the governing statutory authority demonstrates legislative intent to grant an entity the 'nature, purposes, and powers' of an 'arm of the State government,' that entity is a government unit unto itself." (quoting *Harris Cty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1101 (Tex. 1940))).

justifications: preserving the separation of government power and protecting the public treasury from lawsuits and judgments.

Nor does the legislation authorizing private university police departments reflect an intent that private universities possess sovereign immunity. The Education Code permits private universities to commission and employ peace officers. Each officer has official immunity under the code, from which the University may derivatively benefit.[8] But the legislature omitted any expression that private universities have independent immunity separate from their officers. Because neither the doctrine's purposes nor the operative legislation supports extending sovereign immunity to the University, we affirm the court of appeals.

# I

The Texas legislature authorized "[t]he governing boards of private institutions of higher education, including private junior colleges, to employ and commission peace officers."[9] In 1994, the State's law-enforcement licensing agency approved the University's application to form a police department. Though privately employed, the University's officers enforce state and local

---

[8] *See, e.g.*, TEX. EDUC. CODE § 51.212(b) (affording private-university peace officers "all the powers, privileges, and immunities of peace officers"); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (describing official immunity and its applicability to government employees); *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995) (holding governmental entities enjoy derivative immunity for acts committed by employees that are covered by official immunity); *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet.) (holding that when an officer is "performing a public duty, such as the enforcement of general laws, the officer's private employer incurs no vicarious responsibility for that officer's acts, even though the employer may have directed the activities" (citing *Blackwell v. Harris County*, 909 S.W.2d 135, 139 (Tex. App.—Houston [14th Dist.] 1995, writ denied))); *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 418 (Tex. App.—Dallas 2007, pet. denied) ("If the officer was acting as an on-duty officer at the time the acts were committed, then respondent superior will not extend liability to the employer.").

[9] TEX. EDUC. CODE § 51.212(a) ("The governing boards of private institutions of higher education, including private junior colleges, are authorized to employ and commission peace officers for the purpose of enforcing: (1) state law on the campuses of private institutions of higher education; and (2) state and local law, including applicable municipal ordinances, at other locations, as permitted by Subsection (b) or Section 51.2125.").

law within the statute's parameters and have "all the powers, privileges, and immunities of peace officers."[10]

In 2013, a University peace officer stopped Cameron Redus on suspicion of driving while intoxicated. An altercation ensued, and the officer fatally shot Cameron. His parents sued the officer and the University for wrongful death and survival damages. The Reduses allege that the University "failed to exercise reasonable care in hiring, training, supervising and retaining" the officer.

The University filed a plea to the jurisdiction, contending that it is immune from suit. The trial court denied the plea, and the University appealed that ruling under a provision in the Tort Claims Act providing for an interlocutory appeal.[11] The court of appeals held that the University could not bring an interlocutory appeal because it is not a governmental unit as the statute defines it.[12] The statute permits an appeal by the government and "any other institution, agency, or organ of government the status and authority of which are derived from . . . laws passed by the legislature under the constitution."[13] We reversed, holding that, under the interlocutory appeal statute, the University met that definition "for purposes of law enforcement."[14] We concluded that the University attained this status because the legislature has authorized the University to enforce state and local law through commissioned peace officers.[15]

---

[10] *Id.* § 51.212(b).

[11] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

[12] *Univ. of the Incarnate Word v. Redus*, 474 S.W.3d 816, 824–25 (Tex. App.—San Antonio 2015), *rev'd*, 518 S.W.3d 905 (Tex. 2017).

[13] TEX. CIV. PRAC. & REM. CODE §§ 51.014(a)(8), 101.001(3)(D).

[14] *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017).

[15] *Id.*

Having concluded the University was entitled to an interlocutory appeal, we remanded the case to the court of appeals to consider in the first instance the University's sovereign immunity argument.[16] "Whether an entity is entitled to an interlocutory appeal and whether an entity has sovereign immunity," we stressed, "are separate questions with separate analytical frameworks."[17] The question whether the University enjoys immunity "implicate[s] principles of sovereign immunity," which have "no bearing" on the interlocutory-appeal analysis.[18] We thus directed the court of appeals to examine "the 'nature and purposes' of sovereign immunity" to determine whether the State's sovereign immunity from suit extends to the University.[19]

On remand, the court of appeals considered whether "the purposes of sovereign immunity—protecting the public fisc and preserving separation of powers—are well-served by shielding a private university from suit arising from the performance of its law enforcement functions."[20] The University argued that, absent its police force, "the cost of providing public safety would fall to local law enforcement" and, in turn, the taxpayers.[21] The court of appeals rejected that argument.[22] Even crediting the University's position, the court of appeals invoked our precedent that immunity is intended to "guard against the unforeseen expenditures associated with the government's defending lawsuits and paying judgments that could hamper government

---

[16] *Id.*

[17] *Id.*

[18] *Id.* (citing *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 432 (Tex. 2016)).

[19] *Id.* (quoting *Wasson*, 489 S.W.3d at 432).

[20] 580 S.W.3d 184, 191–92 (Tex. App.—San Antonio 2018).

[21] *Id.* at 192.

[22] *Id.*

functions by diverting funds from their allocated purposes."[23] The court of appeals accordingly declined to hold that the University possesses sovereign immunity.[24] We granted review.

## II

### A

Sovereign immunity provides that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent."[25] Sovereign immunity is "inherent" in Texas statehood and "developed without any legislative or constitutional enactment."[26]

At its inception, courts premised sovereign immunity on the notion that "the King can do no wrong."[27] The rationale for immunity evolved away from this legal fiction over time, but the doctrine remains unique to governmental authority.[28] Modern justifications for it include preserving executive and legislative power from judicial encroachment and protecting the public treasury.[29] Immunity "preserves separation-of-powers principles by preventing the judiciary from interfering with the Legislature's prerogative to allocate tax dollars."[30] And immunity protects the

---

[23] *Id.* at 192–93 (internal quotation marks omitted) (quoting *Brown & Gay Eng'g v. Olivares*, 461 S.W.3d 117, 119, 123 (Tex. 2015)).

[24] *Id.* at 193.

[25] *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847).

[26] *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429, 431 (Tex. 2016) (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006)).

[27] *Id.* at 431 (quoting 1 WILLIAM BLACKSTONE, COMMENTARIES *246) (internal alterations omitted).

[28] *Id.*

[29] *Brown & Gay Eng'g v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 97 (Tex. 2012) (noting that immunity respects "the relationship between the legislative and judicial branches of government")); *Nazari v. State*, 561 S.W.3d 495, 508 (Tex. 2018) ("[S]afeguarding the treasury is one of sovereign immunity's primary justifications in the modern era."); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 414–16 (Tex. 1997) (Hecht, J., concurring) (outlining modern political and financial reasons for sovereign immunity).

[30] *Brown & Gay*, 461 S.W.3d at 121 (citing *Rusk*, 392 S.W.3d at 97).

public treasury by shielding the public "from the costs and consequences of improvident actions of their governments."[31] Supported by these rationales, sovereign immunity "protects the public as a whole by preventing potential disruptions of key government services that could occur when government funds are unexpectedly and substantially diverted by litigation."[32]

It is "the judiciary's responsibility to define the boundaries of [this] common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance."[33] The legislature informs that decision when it authorizes an entity to act as an arm of the State government, and the legislature further "determines when and to what extent to waive that immunity."[34] This case presents a boundary question—we decide whether sovereign immunity extends to a private university because the legislature has authorized it to enforce state and local law through commissioned peace officers.

**B**

We have examined sovereign immunity in three contexts outside the State government: political subdivisions, legislatively authorized entities, and government contracts. We have long held that "[p]olitical subdivisions of the state—such as counties, municipalities, and school districts—share in the state's inherent immunity."[35] These entities "represent no sovereignty

---

[31] *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

[32] *Brown & Gay*, 461 S.W.3d at 121.

[33] *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006).

[34] *Brown & Gay*, 461 S.W.3d at 122; *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 325 (Tex. 2006) ("[W]here the governing statutory authority demonstrates legislative intent to grant an entity the 'nature, purposes, and powers' of an 'arm of the State government,' that entity is a government unit unto itself." (quoting *Harris Cty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1101 (Tex. 1940))).

[35] *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429–30 (Tex. 2016) (citing *Reata*, 197 S.W.3d at 375).

distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them."[36] Thus, they enjoy "governmental" immunity for acts performed as a "branch of the state" but not for "acts performed in a proprietary, non-governmental capacity."[37]

In analyzing legislatively authorized entities that are not political subdivisions, we consider whether the authorizing statute "evinces clear legislative intent"[38] to vest the entity with the "nature, purposes, and powers" of an "arm of the State government."[39] If so vested, "that entity is a government unit unto itself" and is "entitled to assert immunity in its own right" when it performs a "governmental function."[40] The entity is perforce a "discrete governmental unit" and enjoys "the same governmental immunity as other political subdivisions."[41] If, however, an entity's underlying "nature, purposes and powers" are not congruent with an arm of State government, then the legislature cannot "de facto grant" it sovereign immunity.[42]

Outside the State, its political subdivisions, and legislatively authorized entities, we have examined sovereign immunity in the contractual context. In *Brown & Gay Engineering, Inc. v.*

---

[36] *Payne v. Massey*, 196 S.W.2d 493, 495 (Tex. 1946).

[37] *Wasson*, 489 S.W.3d at 430 (first citing *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949); then citing *City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (1884)).

[38] *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 750 (Tex. 2019).

[39] *Ben Bolt*, 212 S.W.3d at 325 (quoting *Mann*, 140 S.W.2d at 1101). The question presented in *Ben Bolt* was whether a legislatively authorized "self-insurance fund composed of local political subdivisions" was itself a governmental entity entitled to immunity. *See id.* at 322, 324; *see also Rosenberg*, 571 S.W.3d at 741 (determining whether a legislatively authorized economic development corporation is a governmental entity entitled to immunity).

[40] *Ben Bolt*, 212 S.W.3d at 325–26.

[41] *Id.*

[42] *Rosenberg*, 571 S.W.3d at 749–50 (observing that the legislature cannot "de facto grant an entity immunity simply by designating it as a 'governmental entity,'" and noting that "[s]erving public purposes . . . does not ipso facto equate to status as a governmental entity for governmental immunity purposes").

*Olivares*, we considered whether a private engineering firm that contracted with a local toll-road authority enjoyed derivative immunity in performing its government contract.[43] If immunity is available at all, we concluded, it arises only if "the alleged cause of the injury was not the independent action of the contractor, but the action taken by the government *through* the contractor."[44] Under the facts presented, the government did not exercise the requisite control over the contractor's decisions to constitute government action.[45] We further concluded that extending sovereign immunity would not comport with the doctrine's "nature and purposes," in part because the lawsuit against the contractor would neither "threaten allocated government funds" nor hold the contractor liable "merely for following the government's directions."[46]

### III

The parties draw from these lines of sovereign immunity cases. The Reduses observe that, in *Brown & Gay*, we contemplated government "control" to be an essential prerequisite to immunity.[47] That control is lacking here, the Reduses contend, because the University has no contract with the government, and the government exerts no control over the University's operations. The University's board of trustees—not the State—controls the University's police department. The State contributes no funding to the department and exercises no oversight of its management.

---

[43] *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 119–20 (Tex. 2015).

[44] *Id.* at 125.

[45] *Id.*

[46] *Id.* at 127.

[47] *Id.* at 126 ("We need not establish today whether some degree of control by the government would extend its immunity protection to a private party; we hold only that no control is determinative.").

The University, in contrast, emphasizes our holdings recognizing immunity for legislatively authorized entities that operate as "an arm of the State."[48] The University became an "arm of the State" for law-enforcement purposes, it contends, when it established its police department. The University possesses the "nature, purposes and powers" of State government for law-enforcement purposes, it argues, because its officers perform the "uniquely governmental"[49] task of law enforcement. Absent governmental immunity, the University continues, lawsuits like this one will frustrate the legislature's policy choice to integrate private universities into the State's law-enforcement system. It further postulates that private universities may decline to maintain police departments over liability concerns, placing additional demands on public police departments.

The Reduses reply that the Education Code confers official immunity on the University's peace officers for their law enforcement activities—an affirmative defense the Reduses acknowledge as "belonging to licensed peace officers and only derivatively to the institutions employing them."[50] Absent a legislative directive, they argue, the University's policy concern is not a reason to grant it sovereign immunity.

---

[48] *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 325 (Tex. 2006) (quoting *Harris Cty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1101 (Tex. 1940)).

[49] *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017).

[50] *See Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994) (recognizing that official immunity "protects government officers from personal liability in performing discretionary duties in good faith within the scope of their authority"); *William Marsh Rice Univ. v. Refaey*, 459 S.W.3d 590, 595 (Tex. 2015) (per curiam) (recognizing that a private university "may rely on its employee's assertion of [official] immunity for purposes of invoking interlocutory jurisdiction").

The facts presented in this case do not fall neatly into any camp—the legislature authorized the University to form its campus police department, but the University is a private entity.[51] The University's existing private status, with a police department that is only one part of its overall operations, undermines the notion that the University is an "arm of the State" government.[52] The University's police department answers to the University's leadership and management, not the State's. The University's primary mission is private education, not law enforcement. And we have made clear that "engaging in an act that serves a public purpose says nothing about the nature of the entity itself."[53]

The University concedes that the legislature did not "vest [the University] and its many departments with governmental immunity generally," but it asserts that it is "immune for its actions taken within the scope of the authority conferred."[54] In granting official immunity to University peace officers, the legislature recognized the scope of that authority. Though the University may have derivative official immunity for its employees' law-enforcement actions, its police department is not an independent law-enforcement entity; it is part of the University.[55]

---

[51] Today we also decide *El Paso Educ. Initiative, Inc. v. Amex Props., LLC.*, in which "[w]e conclude that open-enrollment charter schools act as an arm of the State government" because they "exercise the same powers and perform government tasks in the same manner as traditional public schools" and "expressly operate as part of the State's public education system." ___ S.W.3d ___, ___ (Tex. 2020). In that case, we hold that the legislature intended to vest charter schools with the "nature, purposes, and powers" of an "arm of the State" government.

[52] *See Refaey*, 459 S.W.3d at 593 (recognizing that "no applicable statute treats [private] Rice University or its police force like a state agency").

[53] *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 750 (Tex. 2019) (citing *Brown & Gay Eng'g v. Olivares*, 461 S.W.3d 117, 127 (Tex. 2015)).

[54] The University thus seems to suggest that its immunity is derivative of its officer's immunity, but it did not raise derivative official immunity in its jurisdictional plea.

[55] We previously have held that private-university police officers are "officer[s] . . . of the state." *Refaey*, 459 S.W.3d at 594 (alteration in original) (quoting TEX. CIV. PRAC. & REM. CODE § 51.014(a)(5)). In *Ben Bolt* and *Rosenberg*, we observed that we need not decide whether the entities at issue had immunity derivative of their members. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 326 (Tex. 2006) (concluding that because "the Fund enjoys immunity in its own right, we need not

Sovereign immunity is entity-based.[56] The State did not charter or create the University. The State does not fund the University's police department or set the department's policies, procedures, or protocols. The State does not hire or fire the University's officers. The University's administration, and its private governing board, are alone responsible for its police department's day-to-day operations and decision making.

The University's argument for immunity is based in the legislative authorization to form a police department, yet the "control" requirement that we contemplated in *Brown & Gay* is instructive. Because the University is private, the extent to which the government exercises control over the activities the University characterizes as governmental is relevant—sovereign immunity potentially extends to the University if the complained-of conduct was not the University's "independent action," but rather "action taken by the government."[57]

---

decide whether the Fund's immunity is also derivative of its members"); *Rosenberg*, 571 S.W.3d at 752 ("Derivative immunity is a distinct analytical inquiry that the parties have not briefed—and the record is not developed on this point—so we do not consider it.").

[56] *See, e.g.*, *Rosenberg*, 571 S.W.3d at 748 ("We begin by looking at the Act to determine whether the Legislature intended an [economic development corporation] to have discrete governmental-entity status separate and apart from its authorizing municipality."); *Ben Bolt*, 212 S.W.3d at 324–25 (examining various statutory provisions to determine whether statutorily authorized governmental self-insurance fund's "'nature, purposes and powers' demonstrate legislative intent that it exist as a distinct governmental entity entitled to assert immunity in its own right for the performance of a governmental function" (quoting *Harris Cty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1101 (1940))).

[57] *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 125 (Tex. 2015).

That control is absent here.[58] Though the University obtained State approval to form its police department, the University's governing board is in charge.[59] That board is not accountable to the taxpayers or to public officials. Sovereign immunity "prohibits suits against the *government* without the state's consent."[60] Because the University's police department is not accountable to the government, we conclude that the University is not an arm of the State government.[61]

---

[58] *Cf. id.* at 124–25 (surveying cases considering derivative immunity in the contractor context). Some states hold that sovereign immunity does not extend to a private entity regardless of government control. *See, e.g.*, *Evans v. Patterson*, 112 So. 2d 194, 198 (Ala. 1959); *Atkinson v. Sachno*, 541 S.E.2d 902, 905 (Va. 2001); *see also* COLO. REV. STAT. § 24-50-505 (declining to extend sovereign immunity to independent contractors except as provided by law). Other states hold that, if derivative immunity exists, it provides "immunity" from liability if the defendant was not otherwise culpable. And to the extent it is recognized as "immunity," it is most often considered "immunity from liability," not immunity "from suit." *See, e.g.*, *Smith v. Rogers Grp, Inc.*, 72 S.W.3d 450, 455–56 (Ark. 2002); *State Constr. Co. v. Johnson*, 62 S.E.2d 413, 414–15 (Ga. Ct. App. 1950); *Black v. Peter Kiewit Sons' Co.*, 497 P.2d 1056, 1058 (Idaho 1972); *Acton Mfg. Co. v. George M. Myers, Inc.*, 320 P.2d 840, 843 (Kan. 1958); *Taylor v. Westerfield*, 26 S.W.2d 557, 561 (Ky. 1930); *Phegley v. Porter-DeWitt Constr. Co.*, 501 S.W.2d 859, 863 (Mo. Ct. App. 1973); *Broadhurst v. Blythe Bros. Co.*, 17 S.E.2d 646, 649–50 (N.C. 1941); *Stiers v. Mayhall*, 248 P.2d 1047, 1052 (Okla. 1952); *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 123 A.2d 888, 889 (Pa. 1956); *Palin v. Gen. Constr. Co.*, 287 P.2d 325, 327–28 (Wash. 1955).

[59] The State exercises some regulatory power by requiring a private university police department to submit information about the proposed department's funding, resources, policies, administrative structure, and insurance to obtain approval to operate. *See* 37 TEX. ADMIN. CODE § 211.16(b). Once approved, departments are subject to audits. *Id.* § 211.26. The University does not suggest that this regulatory oversight amounts to control of the department.

[60] *Rosenberg*, 571 S.W.3d at 740 (emphasis added).

[61] The University does not cite a case in which a court has extended sovereign immunity to a private university absent an express legislative directive. Courts in other states differ as to whether police officers of private institutions have immunity. *See, e.g.*, *Mills v. Duke Univ.*, 759 S.E.2d 341, 344–45 (N.C. 2014) (holding that private university police officers "are entitled to public official immunity for their acts in furtherance of their official duties"); *cf. Hartley v. Agnes Scott Coll.*, 759 S.E.2d 857, 864 (Ga. 2015) (holding that private university officers were not entitled to official immunity because they were not acting for a "state government entity"). At least one state—Indiana—has conferred "the same common law and statutory immunities granted to the state" for private universities and their governing boards for activities related to law enforcement. IND. CODE § 21-17-5-4(c)(1). And Oklahoma provides that private-university police departments "shall be deemed to be public agencies . . . for the limited purposes of enforcing the criminal statutes of Oklahoma." OKLA. STAT. tit. 74, § 360.17(D). Other states vest authority in campus police officers, sometimes explicitly conferring qualified or official immunity, but they do not address immunity for their employing institutions. *See, e.g.*, ARK. CODE § 12-20-201(b)(1) (vesting private university police officers with "all the powers, duties, and obligations provided under the law for municipal police departments and county sheriffs"); GA. CODE § 20-8-2 (granting public and private campus officers "the same law enforcement powers, including the power of arrest, as a law enforcement officer of the local government with police jurisdiction over such campus"); 110 ILL. COMP. STAT. 1020/1, § 1 (vesting private university officers with "the powers of municipal peace officers and county sheriffs"); OHIO REV. CODE § 1713.50(C) (vesting campus police officers with "the same powers and authority that are vested in a police officer of a municipal corporation or a county sheriff"); TENN. CODE § 49-7-118(e)(2) (extending immunity to private-university officers when the officer assists another agency).

## IV

### A

Extending sovereign immunity to the University does not otherwise further the doctrine's purposes. We have identified two purposes in sovereign immunity's modern-day context: preserving the separation of government power and protecting the public treasury.[62]

Sovereign immunity respects "the relationship between the legislative and judicial branches of government"[63] and "preserves separation-of-powers principles by preventing the judiciary from interfering with the Legislature's prerogative to allocate tax dollars."[64] Because no tax dollars are at stake in this suit, it presents no separation-of-powers risk of judicial reallocation.

The University maintains that we should not reduce separation-of-powers principles to monetary allocations. It suggests that the legislature's authorization of its police department reflects a policy decision to incorporate private universities into the State's law-enforcement system. Withholding sovereign immunity, it argues, interferes with that decision.

Certainly, the legislature authorized private university police departments. But it did not mandate them or fund them.[65] There is no carrot if the University accepts, and no stick if it declines. The legislature does nothing to discourage private universities from hiring municipal police officers, which the statute also permits, or from doing nothing at all.[66]

---

[62] *Brown & Gay*, 461 S.W.3d at 121.

[63] *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 97 (Tex. 2012).

[64] *Brown & Gay*, 461 S.W.3d at 121.

[65] We do not suggest that acceptance of state funding, standing alone, presents a justification for extending sovereign immunity.

[66] *See* TEX. EDUC. CODE § 51.212(d).

The legislative and executive branches are politically accountable for their policy choices, even if they are not accountable through a money judgment. Sovereign immunity restrains judicial interference in the executive and legislative branches so that ultimately the people, not the courts, strike the policy balance between immunizing the government's actions and providing a judicial remedy.[67] Conferring immunity to an essentially unaccountable private university does not serve a separation-of-powers purpose.

In addressing the protection of the public treasury, the University heavily relies on an assumption that private universities will disband their police departments absent sovereign immunity. If private universities decline to form or dissolve their existing police departments over liability concerns, the University suggests, neighboring law-enforcement agencies must fill that void, requiring increased public funding. The University thus urges us to consider indirect costs to the government should private universities discontinue their police departments.

Sovereign immunity "guard[s] against the 'unforeseen expenditures' associated with the government's defending lawsuits and paying judgments 'that could hamper government functions by diverting funds from their allocated purposes.'"[68] But the government will not pay a judgment against the University should one result. Any expense the University incurs will fall on the University, not the government or its taxpayers. Speculation that private universities might disband campus police departments does not justify an unprecedented expansion of sovereign immunity to the private arena. Whether private universities have sovereign immunity for their law-enforcement

___

[67] *See Hall v. McRaven*, 508 S.W.3d 232, 253 (Tex. 2017) (Brown, J., concurring) ("[I]n our system of government, the people are the sovereign: 'All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit.'" (quoting TEX. CONST., art. I, § 2)).

[68] *Brown & Gay*, 461 S.W.3d at 123 (first quoting *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam); then quoting *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002)).

15

activities for decades has been, at best, an unsettled question, yet more than twenty private universities counted it worth the risk and voluntarily established police departments anyway.[69] It does not follow that private universities will abdicate that role.[70] Regardless, immunity "has never been defended as a mechanism to avoid any and all increases in public expenditures."[71] The University warns against possibly higher operating costs for government police departments, not *unforeseen* expenditures from lawsuits and judgments.

To date, we have not blanketed a private entity with sovereign immunity to, as the University puts it, "spur affirmative action for the public good without fear of litigation." What the University seeks is ambitious—it asks to implement a public-policy initiative through a judicial grant of immunity. The University's desire to extend sovereign immunity to benefit the public good, however, would not come without costs. Though "fundamental to the nature and functioning of government,"[72] sovereign immunity places the burden of the "costs and consequences of

---

[69] The Maryland legislature recently authorized Johns Hopkins University to establish a university police department but expressly stated that the university, its police department, and its officers are not entitled to sovereign or official immunity. MD. CODE ANN., EDUC. § 24-1211(a)(1)). Despite this lack of immunity, the university established a private police force.

[70] In arguing that "a private university's incentive to restrict or cease law enforcement is real" absent immunity, the University invokes policies that support the affirmative defense of official immunity, like "the danger that the threat of . . . liability would deter [a police officer's] willingness to execute his office with the decisiveness and the judgment required by the public good." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 240 (1974)). But "sovereign immunity and official immunity are to be distinguished." *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995). Official immunity serves the critical purpose of protecting police officers for split-second decisions made in the line of duty so that officers do not "flinch from acting because of fear of liability." *Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex. 1992) (Cornyn, J., concurring) (quoting *Carpenter v. Barner*, 797 S.W.2d 99, 102 (Tex. App.—Waco 1990, writ denied)). Sovereign immunity has no regard for individual decision making, but instead serves institutional concerns. And, as we discuss, the Reduses acknowledge that the University benefits from the official immunity that the Education Code confers on private university peace officers.

[71] *Brown & Gay*, 461 S.W.3d at 123 (quoting *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011)).

[72] *Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 808 (Tex. 2016).

improvident actions of their governments" on aggrieved individuals and businesses.[73] "[J]ust as immunity is inherent to sovereignty, unfairness is inherent to immunity."[74] Political accountability is a vital counterweight to sovereign immunity's inequity. Absent a legislative directive, sovereign immunity does not exist as a judicial assist for private actors to accomplish the common good.[75]

## B

The Court determines the common law, and thus "it remains the judiciary's responsibility" to define sovereign immunity's "boundaries" and "to determine under what circumstances sovereign immunity exists in the first instance."[76] Because the legislature "can modify or abrogate common law rules," provided its intent is clear,[77] we consider legislative intent in establishing the doctrine's common-law contours.[78]

We discern no legislative directive that private-university police departments have sovereign immunity.[79] The legislature has not said so, though it has in other contexts for other

---

[73] *Brown & Gay*, 461 S.W.3d at 121, 123 (quoting *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex. 2006)).

[74] *Hillman v. Nueces County*, 579 S.W.3d 354, 361 (Tex. 2019) (quoting *City of Galveston v. State*, 217 S.W.3d 466, 480 n.38 (Tex. 2007) (Willett, J., dissenting)).

[75] *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 750 (Tex. 2019) ("[M]erely engaging in an act that serves a public purpose says nothing about the nature of the entity itself . . . ." (footnote omitted)).

[76] *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006).

[77] *See, e.g.*, *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015).

[78] *See Dugger v. Arredondo*, 408 S.W.3d 825, 829 (Tex. 2013) ("[S]tatutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended." (alternation in original) (quoting *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007))).

[79] We observed in *Rosenburg* that the legislature cannot "de facto grant" sovereign immunity "simply by designating" an entity as "'governmental.'" *Rosenberg*, 571 S.W.3d at 750. But here, the legislature has not designated private universities or their police departments to be governmental units other than for purposes of the Public Information Act. TEX. EDUC. CODE § 51.212(f) ("A campus police department of a private institution of higher education is a law enforcement agency and a governmental body for purposes of Chapter 552, Government Code, only with respect to information relating solely to law enforcement activities.").

kinds of entities.[80] Though the legislature vested "[a]ny officer" commissioned by a private university with "all the powers, privileges, and immunities of peace officers,"[81] it did not similarly vest the "governing boards of private institutions of higher education."[82]

After this suit was filed, the legislature amended the statute to designate that a campus police department is "a law enforcement agency and a governmental body" under the Public Information Act, but even then "only with respect to information relating solely to law enforcement activities."[83] This amendment recognizes, as we did in *Redus I*, that the law may apply to a private university police department in the same way it does a government entity when the legislature so provides.[84]

The statutory text demonstrates the legislature's awareness of the ramifications of government-entity status; the statute confers official immunity on peace officers, yet designates campus police departments as governmental entities only under the Public Information Act, for a limited purpose. Rather than categorically transforming a private university's status, the statute

---

[80] *See, e.g.,* TEX. EDUC. CODE § 12.1056(a) ("In matters related to operation of an open-enrollment charter school, an open-enrollment charter school or charter holder is immune from liability and suit to the same extent as a school district . . . .").

[81] *Id.* § 51.212(b). This grant of immunity is limited, applying only so far as the officer performs his or her duties "on the property under the control and jurisdiction of the respective private institution of higher education or is otherwise performing duties assigned to the officer by the institution" in the same county in which the private university has land or pursuant to a mutual-assistance agreement with a neighboring law-enforcement agency. *Id.* § 51.212(b)(1)–(2).

[82] *See id.* § 51.212(a).

[83] Act of May 19, 2015, 84th Leg., R.S., ch. 300, § 1, 2015 Tex. Gen. Laws 1418, 1418 (codified at TEX. EDUC. CODE § 51.212(f)) (designating a "campus police department" as "a law enforcement agency and a governmental body for purpose of Chapter 552, Government Code [the Public Information Act], only with respect to information relating solely to law enforcement activities").

[84] *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 911 (Tex. 2017) (holding that the University is a "governmental unit" for purposes of taking an interlocutory appeal); *cf. Neighborhood Ctrs., Inc. v. Walker*, 544 S.W.3d 744, 752–53 (Tex. 2018) (outlining the "many instances in which the [Charter School Act] treats open-enrollment charter schools as governmental entities").

links immunity to the peace officers who perform law enforcement functions.[85] The Reduses concede that this conferral includes official immunity, an affirmative defense traditionally enjoyed by peace officers. An officer is immune from suit "arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority."[86] Because a private university's law enforcement activity is a part of a larger, private organization, the legislature has directed that its immunity is conduct-based, not entity-based.

The legislature's limited authorization to private universities to commission peace officers stands in contrast to its incorporation of open-enrollment charter schools into the State's public-education system.[87] Charter schools are expressly "part of the public school system of this state";[88] no similar declaration exists for a private university. The legislature directs that open-enrollment

---

[85] TEX. EDUC. CODE § 51.212(a)–(b).

[86] *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The Reduses concede that the statute's official immunity affords the University and its police officers some protection. *See* TEX. EDUC. CODE § 51.212(b). We have held that governmental law-enforcement agencies and their governing jurisdictions benefit derivatively from an employee's official immunity. *See DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995). In the private employer context—typically when private entities employ off-duty police officers—courts have held that when an officer is "performing a public duty, such as the enforcement of general laws, the officer's private employer incurs no vicarious responsibility for that officer's acts, even though the employer may have directed the activities." *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet.); *see also Larkin v. Johnson*, 44 S.W.3d 188, 189 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("[W]here an officer is performing a job incident to enforcing the public laws, he is acting in the course and scope of his employment as a police officer even if the private employer directed him to perform the duty."); *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 418 (Tex. App.—Dallas 2007, pet. denied) ("If the officer was acting as an on-duty officer at the time the acts were committed, then respondeat superior will not extend liability to the employer."). Although we have not considered the extent to which official immunity might protect a private university from liability for the action of its police officers, we have previously acknowledged the doctrine has at least some applicability to private universities. *See William Marsh Rice Univ. v. Refaey*, 459 S.W.3d 590, 595 (Tex. 2015) (per curiam) (recognizing that, while private universities are not state agencies, a private university "may rely on its employee's assertion of [official] immunity for purposes of invoking interlocutory appellate jurisdiction").

[87] *See El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, ___ S.W.3d ___, ___ (Tex. 2020) ("These [charter] schools are accountable to state government through oversight of their charters and through the receipt of substantial public funding. They exercise the same powers and perform government tasks in the same manner as traditional public schools. They expressly operate as part of the State's public education system, and they are generally open to the public.").

[88] TEX. EDUC. CODE § 12.105.

charter schools have immunity from suit;[89] it has not directed that private universities have it. Charter-schools operate pursuant to a State contract (a "charter"), requiring that charter schools consent to Texas Education Agency oversight.[90] The Commissioner of Education may revoke a school's charter in response to a failure to comply with the Commissioner's orders.[91] Finally, unlike private universities, charter schools are "generally open to the public," and "generally entitled to state funding and services as if they were a school district."[92] In the case of open-enrollment charter schools, the purposes of extending immunity are served: to protect the public treasury and prevent intrusion into legislative and executive oversight of the allocation of public resources.

*  *  *

We conclude that private universities do not operate as an arm of the State government through their police departments. We further conclude that extending sovereign immunity to the University does not comport with the doctrine's purposes, nor is it consistent with enabling legislation that extends immunity to peace officers engaged in law-enforcement activities. Because the University does not have sovereign immunity, we affirm the judgment of the court of appeals.

---

[89] *Id.* § 12.1056(a) ("In matters related to operation of an open-enrollment charter school, an open-enrollment charter school or charter holder is immune from liability and suit to the same extent as a school district . . . .").

[90] *See generally id.* § 12.101.

[91] *Id.* § 12.115.

[92] *El Paso Educ.*, ___ S.W.3d at ___ (acknowledging open-enrollment charter schools are "open to the public" and are "largely publicly-funded"); *Neighborhood Ctrs., Inc. v. Walker*, 544 S.W.3d 744, 750 (Tex. 2018) (citing TEX. EDUC. CODE §§ 12.106, 12.104(c)).

                                    _____

                                    Jane N. Bland
                                    Justice

OPINION DELIVERED: May 22, 2020

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Envelope ID: 43191602
Status as of 05/22/2020 14:55:03 PM -05:00

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Matthew F.Wymer | | matthew.wymer@akerman.com | 5/22/2020 2:52:35 PM | SENT |
| Laurence S.Kurth | | laurence.kurth@akerman.com | 5/22/2020 2:52:35 PM | SENT |
| Mary Morales | | mary.morales@akerman.com | 5/22/2020 2:52:35 PM | SENT |
| Wallace Jefferson | 19 | wjefferson@adjtlaw.com | 5/22/2020 2:52:35 PM | SENT |
| Shannon Kathleen Dunn | 24074162 | shannon@shannondunnlaw.com | 5/22/2020 2:52:35 PM | SENT |
| Jorge Herrera | 24044242 | jherrera@herreralaw.com | 5/22/2020 2:52:35 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 5/22/2020 2:52:35 PM | SENT |
| Brent Clark Perry | 15799650 | bperry@burfordperry.com | 5/22/2020 2:52:35 PM | SENT |
| Robert R. Burford | 3371700 | rburford@burfordperry.com | 5/22/2020 2:52:35 PM | SENT |
| Robert A. Valadez | 20421845 | rvaladez@shelton-valadez.com | 5/22/2020 2:52:35 PM | SENT |
| Mason Herring | 24071746 | mherring@herringlawfirm.com | 5/22/2020 2:52:35 PM | SENT |
| Frank Herrera | 9531000 | fherrera@herreralaw.com | 5/22/2020 2:52:35 PM | SENT |
| Rance Craft | | rance.craft@oag.texas.gov | 5/22/2020 2:52:35 PM | SENT |
| Cecilia Hertel | | cecilia.hertel@oag.texas.gov | 5/22/2020 2:52:35 PM | SENT |
| Javier Duran | | jduran@shelton-valadez.com | 5/22/2020 2:52:35 PM | ERROR |
| Gena Amerson | | gena.amerson@akerman.com | 5/22/2020 2:52:35 PM | ERROR |
| Cathi Trullender | | ctrullender@adjtlaw.com | 5/22/2020 2:52:35 PM | SENT |